**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES R. MEADOWS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-6486** |
| | : | |
| **CITY OF PHILADELPHIA, *et al.*** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**BAYLSON, J.** **SEPTEMBER 15, 2026**

James R. Meadows has filed a thirty-one page Complaint naming the City of Philadelphia, Philadelphia police officials Officer Keary Sellers, Detective Scott Amrik, Detective Adam O'Donnell, and Supervisor Charles Harron, III (the "Police Officer Defendants"), Philadelphia District Attorney Lawrence S. Krasner and three Assistant District Attorneys – Melissa Freeman, Datla Spoorthi and Rachel Opperman (the "Prosecutor Defendants"), and two judges – Francis T. Shields and Natasha T. Smith. All of the Defendants are named in their individual and official capacities.[1] His claims arise from an arrest on July 19, 2024 and his subsequent detention. Meadows, who is not currently incarcerated, also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Meadows leave to proceed *in forma pauperis* and dismiss the Complaint.

---

[1] While Judge Shields and Judge Smith are listed in the caption of the Complaint and the list of Defendants, they are not otherwise mentioned in the body of the Complaint.

## I. FACTUAL ALLEGATIONS[2]

Meadows asserts that on July 19, 2024 Officer Keary Sellers was called to the Cricket store on Aramingo Avenue in Philadelphia by employee Alexa Rosario. (Compl. at 7, 8.) He took a report from Rosario who claimed she was assaulted by Meadows. (*Id.*) Meadows claims that video viewed by Sellers showed that Rosario was the aggressor and assaulted him by spraying mace in his face but Sellers filed a false police report that Rosario was assaulted. (*Id.* at 7-9.) This led to an arrest warrant being issued, and Meadows was arrested. (*Id.*) Meadows claims the arrest violated his Fourth and Fourteenth Amendment rights. (*Id.* at 9.) As a result of the allegedly false report, he was detained on charges of aggravated assault, recklessly endangering another person, possessing an instrument of crime, terroristic threats, and simple assault. (*Id.* at 9, 10.) He was detained on August 3, 2024 at Curren Fromhold Correctional Facility until October 21, 2024 when he had a preliminary hearing. (*Id.*) After another week in custody, he was able to post bail. (*Id.*) He asserts a claim for malicious prosecution against Sellers because "there was no real reason or good cause to prosecute. It was clearly self-defense." (*Id.* at 11.)

Meadows makes the same allegations against Defendant Detective Scott Amrik about the incident at the Cricket store, adding that he had no probable cause to go to Defendant Assistant District Attorney Melissa Freeman and ask that an arrest warrant be issued. (*Id.* 12-13.)

---

[2] The factual allegations are taken from Meadows's Complaint, consisting of the form available to unrepresented litigants to file claims plus attached handwritten pages. (ECF No. 2.) The Court deems the entire submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. Where the Court quotes from *pro se* pleadings, punctuation, spelling, and capitalization errors will be cleaned up as needed. The Court may consider matters of public record when conducting a screening under § 1915. *See e.g., Medina v. Allentown Police Dep't,* No. 23-2055, 2023 WL 7381461, at *2 (3d Cir. Nov. 8, 2023) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).

Defendant Detective O'Donnell, "[b]y excepting [sic] false statements for an arrest warrant" caused Meadow's arrest and violated his rights "[u]pon submitting an affidavit to [Freeman] requesting that [he] be required to answer for all the charges." (*Id*. at 14.) Because of the report taken by Sellers, and the affidavit written by Amrik and O'Donnnell, Defendant Supervisor Harron, alleged to have special training in reviewing police reports and affidavits of probable cause, still approved the arrest report even though it allegedly contained insufficient evidence and perjured statements. (*Id*. at 15-17.)

ADA Freeman is alleged to have engaged in malicious prosecution because she reviewed and approved perjured testimony by witnesses. (*Id*. at 18-19.) She initially agreed and approved the arrest and imprisonment, and approved the ongoing prosecution of Meadows. (*Id*. at 19.) Defendant ADA Datha Spoorthi prosecuted Meadows at his preliminary hearing. (*Id*. at 21.) She allegedly reviewed the false evidence supplied by the police yet "still continued to prosecute being an experienced prosecutor[] [a]nd knowing that the statements and of the Complainant was contrary to the video evidence." (*Id*.) Spoorthi also strongly objected to lower bail arguing that Meadows was a danger to society. (*Id*. at 22.) However, the presiding judge, non-defendant Francis W. McCloskey, "saw the maliciousness of the prosecution and dismissed both claims of aggravated assault." (*Id*. at 23.) He lowered bail from $50,000 to $10,000. (*Id*.)

Thereafter, Spoorthi refiled the criminal complaint again charging aggravated assault. (*Id*. at 24.) This decision was "endorsed" by Defendant Lawrence S. Krasner as the Philadelphia District Attorney. (*Id*.) Non-defendant Judge Eisenhower upheld the first court's ruling on lack of evidence and again dismissed the charges. (*Id*.) Meadows claims that Krasner approved brining the new charges even though he is an experienced district attorney who should have known that the evidence was false. (*Id*. at 25.) Krasner allegedly failed to properly supervise the

ADAs, did nothing to correct their errors, and allowed the malicious prosecution. (*Id*. at 26-28.) Defendant ADA Rachel Opperman was the prosecutor on the case in Philadelphia Municipal Court on April 28, 2025 and allegedly knew the "witness lied throughout the entire case." (*Id*. at 28.) Based on these allegations, Meadows seeks money damages. (*Id*. at 30.)

Public records indicate that Meadows was charged with aggravated assault – attempt to cause serious bodily injury, possession of an instrument of crime, terroristic threats with intent to terrorize another, simple assault, recklessly endangering another person, and aggravated assault – attempt to cause bodily injury with a deadly weapon. *Commonwealth v. Meadows*, MC-51-CR-0017106-2024 (M.C. Philadelphia). Judge McCloskey conducted a preliminary hearing on September 18, 2024. There were subsequent preliminary hearings on refiled charges conducted by Judge Eisenhower on December 9, 2024, February 3, 2025, and March 20, 2025. Bail was originally set at $50,000 on September 1, but reduced to $10,000 on September 18, 2024, and Meadows posted 10% cash on September 22, 2024. At the September 18 hearing the two aggravated assault charges were dismissed for lack of evidence. After being refiled, one of the two aggravated assault charges was again dismissed on October 18, 2024. After again being refiled, both charges were dismissed for lack of evidence on March 20, 2025. On April 28, 2025, Defendant Judge Francis T. Shields presided at Meadows's Municipal Court jury waiver trial where he was found not guilty of possession of an instrument of crime, terroristic threats, recklessly endangering another, and the two aggravated assault charges were dismissed for lack of evidence. Meadows was found guilty of simple assault and sentenced to a maximum term of 12 months, directed to undergo anger management, and to stay away from 3595 Aramingo Avenue and the complaining witness. *Commonwealth v. Meadows*, MC-51-CR-0017106-2024 (M.C. Philadelphia). At a trial *de novo* in the Court of Common Pleas, Defendant Judge Natasha

Taylor-Smith again found Meadows guilty of simple assault on August 6, 2025 and imposed the same punishment. *Commonwealth v. Meadows*, CP-51-CR-0003129-2025 (C.P. Philadelphia). On appeal, the Pennsylvania Superior Court vacated and remanded Meadows's conviction. *See Commonwealth v. Meadows*, 2513 EDA 2025, 2026 WL 2334682 (Pa. Super. Ct. Aug. 12, 2026).

## II. STANDARD OF REVIEW

The Court grants Meadows leave to proceed *in forma pauperis.* Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* pleading as true, draw all reasonable inferences in Meadows's favor, and ask only whether the Complaint contains facts that are sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. The Court may take judicial notice of information published on a government website. *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

Because Meadows is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704

F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be [sic] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

Meadows asserts constitutional claims against each of the named Defendants. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n.3 (1979))). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore,* 399 F.3d at 281); *see also Halsey,* 750 F.3d at 290 ("To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right

... [and] that the person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980))). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)).

**A. Judicial Defendants**

It appears that Meadows named Judge Shields and Judge Smith as Defendants because they presided over his trials in Municipal Court and Common Pleas Court. All civil rights claims against the Judges are subject to dismissal because judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.[3] *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally

[3] While Judge Shields and Judge Smith are listed in the caption of the Complaint and the list of Defendants, they are not otherwise mentioned in the body of the Complaint. Any claim against them is additionally subject to dismissal because of the lack of any allegation of personal involvement. *Rode*, 845 F.2d at 1207.

incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). As Judge Shields and Judge Smith were clearly acting in their judicial capacities when presiding over the trials in cases in which they clearly had jurisdiction to act, all claims against them will be dismissed with prejudice.

**B. Prosecutor Defendants**

Meadows names DA Krasner and ADAs Freeman, Spoorthi, and Opperman as Defendants. Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *id.* at 431, "including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence." *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (citation omitted); s*ee also id.* at 164. (prosecutors were entitled to immunity from claims based on allegations "that at hearings and at trial the Prosecutors withheld material exculpatory evidence from defense counsel, the court, and the jury; filed a criminal complaint without probable cause; and committed perjury before and during trial"). Moreover, District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).

Absolute immunity can extend to "the duties of the prosecutor . . . involv[ing] actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Mancini v.*

*Lester*, 630 F.2d 990, 994 n.6 (3d Cir. 1980) (quoting *Imbler*, 424 U.S. at 431 n.33). This means prosecutors have absolute immunity from suits challenging their preliminary "strategic decisions," such as whether or not to call a witness, or their decision not to prosecute a case. *Harris v. Krasner*, 110 F.4th 192, 198 (3d Cir. 2024).

In contrast to acts that are "intimately associated with the judicial phase of the criminal process," *see Imbler*, 424 U.S. at 430-431, a prosecutor does not have absolute immunity when performing the traditionally investigative functions of law enforcement. *Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993) (considering whether prosecutors actions in determining whether boot print at scene of crime was that of suspect was an investigatory, administrative, or prosecutorial function, and holding that "[w]hen the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same."); *Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999) (noting that "a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity" (citations omitted); *Fogle*, 957 F.3d at 160 ("when prosecutors function as investigators, rather than advocates, they enjoy no right to absolute immunity").

ADAs Freeman, Spoorthi, and Opperman are each alleged to have violated Meadows's civil rights in the course of representing the Commonwealth in his criminal proceedings. Freeman approved the arrest and pretrial detention – *i.e.*, made the strategic decision to bring charges, used perjured testimony, and approved the ongoing prosecution of Meadows. (Compl. at 18-19.) Spoorthi prosecuted Meadows at his preliminary hearing, reviewed allegedly false evidence supplied by the police, and objected to lower bail arguing that Meadows was a danger to society. (*Id*. at 21-22.) Opperman was the prosecutor on the case in Philadelphia Municipal Court on April 28, 2025 and allegedly knew the "witness lied through the entire case." (*Id*. at

28.) Krasner is named because, in his supervisory role as the Philadelphia District Attorney, he approved bringing the new charges even though he should have known that the evidence was false, failed to properly supervise the ADAs, did nothing to correct their errors, and allowed the malicious prosecution. (*Id*. at 26-28.) Because each of these allegations of conduct were intimately associated with the judicial phase of the criminal process, rather than undertaken in some other role, the prosecutors are absolutely immune from Meadows's claims. *Imbler*, 424 U.S. at 430-431. All claims against the Prosecutor Defendants will be dismissed with prejudice.

**C. Police Officer Defendants**

Meadows alleges that Sellers filed a false police report about the Cricket store incident leading to an arrest warrant being issued and asserts a claim for malicious prosecution against Sellers because "there was no real reason or good cause to prosecute. It was clearly self-defense." (Compl. at 11.) Meadows makes the same allegations against Defendant Detective Scott Amrik about the incident at the Cricket store, adding that he had no probable cause to go to Defendant Assistant District Attorney Melissa Freeman and ask that an arrest warrant be issued. (*Id*. 12-13.) Defendant Detective O'Donnell, "[b]y excepting false statements for an arrest warrant" caused Meadow's arrest and violated his rights "[u]pon submitting an affidavit to [Freeman] requesting that [he] be required to answer for all the charges." (*Id*. at 14.) Because of the report taken by Sellers, and the affidavit written by Amrik and O'Donnell, Defendant Supervisor Harron, alleged to have special training in reviewing police reports and affidavits of probable cause, still approved the arrest report even though it allegedly contained insufficient evidence and perjured statements. (*Id*. at 15-17.)

**1. Official Capacity/Municipal Liability Claims**

Meadows's claims against City of Philadelphia officials such as the Police Officer Defendants named in their official capacity are indistinguishable from his claim against the City itself. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Because he has also named the City as a Defendant, the official capacity claims against the Police Officer Defendants are dismissed as duplicative of the claim against the City. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative.").

To state a municipal liability claim, a plaintiff must allege that the municipality's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *Livingston v. Gallina*, No. 25-1948, 2025 WL 2673613, at *2 n.2 (3d Cir. Sept. 18, 2025) (*per curiam*) (quoting *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009)). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his

injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.*

Simply paraphrasing the elements of a *Monell* claim "fails to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability." *Quinn-Winne v. Pennsylvania*, No. 20-2493, 2022 WL 767828, at *2 (E.D. Pa. Mar. 14, 2022) (quoting *Wood v. Williams,* 568 F. App'x 100, 104 (3d Cir. 2014) (affirming dismissal of *Monell* claim where complaint stating elements of cause of action were not sufficient to state a claim)). "For *Monell* liability to attach, there must still be a violation of the plaintiff's constitutional rights." *Harris v. Krasner*, 110 F.4th 192, 198 (3d Cir. 2024) (quoting *Johnson*, 975 F.3d at 403 n.13).

Meadows does not identify a policy of the City of Philadelphia nor does he allege that a policy caused a constitutional violation. Also, because he has failed to allege a plausible underlying constitutional claim (as discussed next), his municipal liability claims against the City of Philadelphia will be dismissed.

**2. Individual Capacity Claims**

The Court understands Meadows to be asserting false arrest/false imprisonment, malicious prosecution, and due process claims against each Police Officer Defendant in their official and individual capacities. (*Id*. at 3, 9-16.) "Plaintiff's false arrest and false imprisonment claims are nearly identical causes of action that courts analyze together." *Covington v. Plymouth Twp. Police Dept.*, 779 F. Supp. 3d 509, 523 (E.D. Pa. 2025) (citing *Wilson v. Dewees*, 977 F. Supp. 2d 449, 455 (E.D. Pa. 2013); *LeCount v. Kropp*, No. 25-1161, 2025 WL 790935, at *2 (E.D. Pa. Mar. 12, 2025)). *See also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter.").

These claims sound under the Fourth Amendment.[4] *DeLade v. Cargan*, 972 F.3d 207, 211 (3d Cir. 2020) ("[T]he Supreme Court has recognized the Fourth Amendment—and not the Due Process Clause of the Fourteenth Amendment—as the appropriate provision of the Constitution under which to analyze allegations of unlawful arrest and pretrial restraint.") (citations omitted); *see also Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.").

The Fourth Amendment requires arrests, detentions, and prosecutions to be supported by probable cause. *Harvard v. Cesnalis*, 973 F.3d 190 202-03 (3d Cir. 2020); *Covington*, 779 F. Supp. 3d at 523 ("To state these claims under Section 1983, a plaintiff must [plausibly allege] 'that: (1) there was an arrest; and (2) the arrest was made without probable cause.'" (quoting *Saintil v. Borough of Carteret*, No. 22-2898, 2024 WL 3565308, at *6 (3d Cir. July 29, 2024)) (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995))); *see also Noviho v. Lancaster County*, 683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest." (citation omitted)). Lack of probable cause is also an element of a Fourth Amendment malicious prosecution claim. *See Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024) (holding that, to state a Fourth Amendment malicious prosecution claim, a plaintiff must

[4] While Meadows makes passing reference to the Due Process Clause, any claim under that provision will be dismissed since his claims properly are brought under the Fourth Amendment.

plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person).[5]

"Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). Courts "consider the existence of probable cause via a 'common sense approach' based on the totality of the circumstances, and viewed from the perspective of an objectively reasonable police officer." *Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (internal citation omitted). The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). For false arrest claims involving multiple charges, establishing probable cause on one charge insulates the defendant from liability. *See Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 303 (3d Cir. 2024); *Bracken v. Township of Manor*, No. 23-1763, 2024 WL 4210535, at *3 n.5 (3d Cir. Sept. 17, 2024) (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 204 n.14 (3d Cir. 2008)).

[5] A malicious prosecution claim under § 1983 has five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). That a "valid" crime was also charged along with the charge that ended in the plaintiff's favor does not create a categorical bar to a claim. *Chiaverini*, 602 U.S. at 562 ("The question here is whether a Fourth Amendment malicious-prosecution claim may succeed when a baseless charge is accompanied by a valid charge. . . . Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's *charge by charge*. (emphasis added)). *See also Harvard*, 973 F. 3d at 199 n.3 ("probable cause on one charge 'does not foreclose a malicious prosecution cause of action' as to a separate charge which lacks probable cause" (quoting *Johnson*, 477 F. 3d at 83)); *Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 300-03 (3d Cir. 2024) (reversing district court's denial of qualified immunity to police officer in light of confusion within Third Circuit and among other Circuits preceding ruling in *Chiaverini*).

To properly analyze a false arrest claim under the Fourth Amendment, the plaintiff must plead the circumstances under which the arrest arose. *Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12, 2023); *Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*) (explaining that, to the extent plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to facts suggesting that Defendant Thompson lacked probable cause to believe he had committed the offense for which he was arrested"); *Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *3 (E.D. Pa. Sept. 23, 2015) (dismissing false arrest, false imprisonment and malicious prosecution claims because plaintiff failed to assert a plausible claim of lack of probable cause where plaintiff, while alleging that he was twice arrested, did not have drugs in his possession, did not break the law and the police confiscated his property, "assert[ed] no other facts that would shed light on the circumstances under which he was arrested, on what the officers knew or should have known at the time of the arrest, or on any other factor that might have a bearing on the claims he attempts to raise"); *Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all of the allegations against them in the underlying criminal proceedings were false).

Meadows fails to allege facts to make his individual capacity claims plausible. First, while he appears to rely upon the fact that many of the charges against him were eventually dismissed for lack of evidence when he had preliminary hearings, that does not state a claim that the Police Officer Defendants lacked probable cause when they sought the warrant. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) (holding that the fact that criminal charges were

subsequently dismissed is irrelevant to the determination of whether probable cause existed in the first instance); *Shurney v. Scott's Econo Inn, Inc.*, No. 05-196, 2006 WL 1766813, at *5 (W.D. Pa. June 23, 2006) ("[T]he fact that the charges were dismissed at the preliminary hearing stage does not thereby negate the existence of probable cause to support Plaintiff's initial arrest and detention."); *Vassallo v. Timoney*, No. 00-84, 2001 WL 1243517, at *7 (E.D. Pa. Oct. 15, 2001) (quoting *DeFillippo*, 443 U.S. at 36 (noting that "[t]he validity of the arrest does not depend on whether the suspect actually committed the crime" and his later acquittal of the offense for which he is arrested is "irrelevant to the validity of the arrest")), *aff'd*, 40 F. App'x 734 (3d Cir. 2002).

Second, he fails to plead the circumstances under which the arrest arose, other than to claim that video surveillance at the Cricket store would have shown that he acted in self-defense, but the Defendants accepted the statement of the complaining witness. He does not describe the incident in any detail, and does not allege facts to support an inference that the Police Officer Defendants lacked probable cause to believe he had committed the offense for which he was arrested. Given the totality of the circumstances viewed from the perspective of an objectively reasonable police officer, including that complaining witnesses statement alone can be sufficient to provide probable cause, his claims cannot proceed. *See Stafford v. Morris*, 816 F. App'x 712, 717 (3d Cir. 2020) ("We have consistently held that a statement from a victim witness is generally sufficient to establish probable cause.") (collecting cases); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 (3d Cir. 2000) (noting that the statement of a single eyewitness may be sufficient to establish probable cause). Accordingly, the individual capacity claims against the Police Officer Defendants will also be dismissed because they are not plausible as alleged.

## IV. CONCLUSION

For the reasons given, Meadows's Complaint will be dismissed in its entirety. His claims against judges and prosecutors will be dismissed with prejudice since no attempt at amendment is possible. His individual capacity claims against the Police Officer Defendants and *Monell* claim against the City will be dismissed without prejudice and Meadows will be afforded an opportunity to file an amended complaint if he can allege (1) additional facts to state plausible claims for false arrest/false imprisonment and malicious prosecution, all of which require he allege that the Defendants lacked probable cause, and (2) a basis for municipal liability. An order with additional information about amendment will be entered separately.

**BY THE COURT:**

**/s/ Michael M. Baylson**

**MICHAEL M. BAYLSON, J.**